UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JIAN WU CHEN,                :

                             : **Case No. 95-cr-870 (BRK)**

        Petitioner,    :

                             :

vs.                          :

                             :

UNITED STATES,               :

        Respondent.    :

---

## MEMORANDUM OF LAW IN SUPPORT OF RULE 60(b)(6) MOTION.

ROBERT J. ADINOLFI, ESQ.
KASEN & LIU LAW FIRM, PLLC
136-33 37TH Avenue, suite 9B
Flushing, NY 11354
(718) 337-8012

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                                 i

PRELIMINARY STATEMENT                                                                1

STATMENT OF THE CASE                                                                 3

I. THE 2255 PETITION IN THIS CASE CONSTITUTED A                                       5
DEFECT AS *DAVIS* AND *TAYLOR* HAVE NOTHING TO DO
WITH HOSTAGE TAKING UNDER 18 U.S.C. 1203(a) AND
THE INEFFECTIVE ASSISTANCE CLAIM WAS RAISED
YEARS LATE AND HAD NO MERIT. THE ONLY
FORTSEEABLE EFFECT WAS TO TRIGGER THE
RESTRICTION FOUND IN 28 USC 2255(h).

II. EXTRAORDINARY CIRCUMSTANCES EXIST FOR THE                                         7
GRANTING OF RELIEF IN THIS CASE: MR. CHEN'S
EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND
UNUSUAL PUNISHMENT WAS VIOLATED BASED ON
NEUROSCIENCE WHICH SHOWS THAT AN
INDIVIDUAL'S BRAIN DEVELOPMENT DOES NOT
REACH MATURITY UNTIL 25 AND THE UNITED STATES
IS IN THE MAJORITY OF COUNTRIES IN THE WORLD
THAT PERMIT LWOP.

CONCLUSION                                                                           11

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1275 n3 (11th Cir. 2008)        5

*Buck v. Davis*, 137 S. Ct. 759, 777-78 (2017)        5

*Gonzalez v. Crosby*, 545 U.S. 524, (2005)        6, 7

*Graham v. Florida*, 560 U.S. 48, 80 (2010)        9

*Harris v. U.S.*, 367 F.3d 74, 81-82 (2d Cir. 2004)        6, 7

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)        6

*Miller v. Alabama*, 576 US 460, 479 (2012)        7

Roper v. Simmons, 543 US 551 (2007)        8

*United States v. Bass*, 462 F. Supp. 3D 176 (N.D.N.Y. 2020)        11
*United States v. Davis,* 139 S.CT. 2319 (2019)        1, 4

*United States v. Piggott*, No. 94 Cr. 417, 2022 U.S. Dist. LEXIS 5293, 2022 WL 118632 (S.D. N.Y. Jan. 2020)        11
*United States v. Taylor*, 142 S. Ct. 22015 (2022)        1, 4, 5

**Statutes, Codes, and Executive Materials**

Federal Rules of Civil Procedure 60(b)(6)        1, 5, 6

18 U.S.C. 1203(a)        1, 2, 3

18 USC 1204        6

    28 USC 2255(h)        2, 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JIAN WU CHEN,                    :

                                    : **Case No. 95-cr-870 (BRK)**

        Petitioner,    :

vs.                              :

UNITED STATES,                   :

        Respondent.    :

---

### **PRELIMINARY STATEMENT.**

Jia Wu Chen requests that the Court invoke its discretion under Federal Rules of Civil Procedure 60(b)(6) and reopen its decision dated August 11, 2023 denying his 2255 motion based on Supreme Court decisions in *United States v. Davis*, 139 S.CT. 2319 (2019) and *United States v. Taylor*, 142 S. Ct. 22015 (2022), and ineffective assistance of trial counsel. On or about September 9, 1996, Mr. Chen pled guilty to three charges under 18 U.S.C. 1203(a) which provides hostage taking resulting death and all 924(c) charges were dismissed. At the time of the sentencing Mr. Chen was 23 years old. Under well-known standards of Rule 60(b)(6) reopening is appropriate for the following reasons which prove that there was a defect in the 2255 motion and that extraordinary circumstances exist justifying relief:

1

1. *<u>Defect in the 2255 petition: A jailhouse lawyer prepared and filed a 2255 petition --the only possible effect of which could be triggering the restrictions under 28 USC 2255(h) concerning successive habeas petitions</u>*. *Davis* and *Taylor do not* relate in any way shape or form to the stand-alone charges of hostage taking under 1203(a) and raising ineffective assistance years after the 1-year deadline would have no other possible outcome.

2. There is new evidence that the age of 25 is where neuroscience shows that that the brain is still developing in young adults and accordingly that his sentence violates the Eighth Amendment against cruel and inhuman punishment under the rationale in Miller.

3. *<u>Extraordinary circumstances exist for granting relief as the continued incarceration of Mr. Chen after 29 years creates the risk of undermining public confidence in the judicial system in  that despite this growing consensus in the United States concerning LWOP, our Nation is among the minority in continuing LWOP –and even Zimbabwe rendered it unconstitutional in 2016</u>*.  As one commentator aptly concluded:

   > The Supreme Court in the Miller decision took the necessary first step in chipping away at mandatory LWOP sentences by forcing states to take a subjective look at juveniles before locking them up and throwing away the keys forever. The Court certainly was correct in determining this treatment is a pure violation of the Eighth

2

> Amendment as cruel and unusual punishment. However, instead of continuing to progress in the realm of juvenile justice, the Court took a small step backward in weakening the sentencing requirements in Jones. Despite this setback, it is not too late for the Court to get back on track. *The time is ripe for the Court to build upon its original science based precedent in Miller and raise the age on the prohibition on mandatory LWOP from eighteen to twenty-five years of age to coincide with advancements in neuroscience and psychology. In the alternative, given the vast array of negative impacts LWOP has on offenders and their families, the fact that the U.S. is in a minority of countries that still imposes the archaic sentence, and that the irrationality of continued punishment goes well beyond what is necessary or humane, and given the variety of viable alternatives*, the Court should deem LWOP as a violation of the Eighth Amendment and abolish the sentences completely. As the Court continues to shift with changes in society and become more progressive in its interpretation of the Constitution and public policy, this will hopefully be an attainable goal in the very near future.

Hayden, How. Hum. & Civ. Rts. L. Rev. 129 (2021-2022); *Age Is Nothing but a Number: Raising the Age on the Prohibition of Mandatory Juvenile Life without Parole in Light of Miller v. Alabama* (emphasis added).

4. <u>Mr. Wu has family on the outside, has taken courses in prison and would not likely pose a threat to society after serving 29 years in jail.</u>

Mr. Chen has maintained 11 years clear conduct in prison. He has shown respect for the rules and regulations of the prison for many years. There is no doubt that he has been rehabilitated. There is no reason to think that Chen will still be a danger to society if released after serving 30 years in prison, at the age of 52 years old.

## STATEMENT OF THE CASE

On or about September 9, 1996, Mr. Chen pled guilty to three charges under 18 U.S.C. 1203(a) which provides hostage taking resulting death and all 924(c). At

3

sentencing on February 21, 1997 the 924(c) charges were dismissed and District Court, Judge Korman sentenced him to life in prison without the possibility parole. The heinous nature of the crimes is not in dispute and involves kidnapping, rape torture and killing of innocent people in effort to extort ransom money from their families. Mr. Chen did not appeal and with the assistance of a jailhouse lawyer filed a 2255 petition  The Petition argued for relief under *United States v. Davis*, 139 S.CT. 2319 (2019) and *United States v. Taylor*, 142 S. Ct. 2015 (2022), and ineffective assistance of trial counsel.  Mr. Chen also moved a psychiatric examination. Judge Korman denied the Petition and motion in  entirety on August 11, 2023. Mr. Chen appealed and sought a COA from the United States Court of Appeals which was denied.

Mr. Chen filed two motions for Compassionate release under the First Step Act which were denied by the Court.  The second motion for Compassionate Release was denied on July 31, 2024 and Judge Korman stated as follows:

> ORDER denying [331] Amended Motion for Compassionate Release. Defendant's motion for compassionate release repeats several arguments from his earlier [289] motion seeking the same relief. For the reasons articulated in the denial of that motion, Defendant has not shown "extraordinary and compelling reasons" to reduce his sentence. 18 U.S.C. § 3582(c)(1)(A)(i); see Order of Mar. 23, 2022 ("The defendant's motion for compassionate release is denied. The defendant committed a series of heinous crimes, namely murder, kidnapping, rape, and torturing his victims. The only appropriate sentence under 18 U.S.C. § 3553(a) is the one he received. See United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021). Nor are any [of] the defendant's alleged reasons for a sentence reduction extraordinary and compelling. He is serving a statutorily mandated life sentence, see 18 U.S.C. § 1203(a), which is not excessive in any

4

motion under the Rule's catchall category, subdivision (b)(6), which permits a court to reopen a judgment for "any other reason that justifies relief." Rule 60(b) vests wide discretion in courts, but we have held that relief under Rule 60(b)(6) is available only in "extraordinary circumstances." *Buck v. Davis*, 137 S. Ct. 759, 777-78 (2017). In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." id; citing, *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). Relief under Rule 60(b)(6) is available only in "extraordinary circumstances," which apply in the Habeas Context where there Supreme Court has explained "That is not the case, however, when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez v. Crosby*, 545 U.S. 524, (2005). See, *Harris v. U.S.*, 367 F.3d 74, 81-82 (2d Cir. 2004).

 Here there is a defect in the Writ of Habeas Corpus Proceeding in that a Jailhouse Lawyer filed a frivolous late 2255 motion relying on *Davis* and *Taylor* which concerns 924(c) when in fact Petitioner's conviction was for 18 USC 1204 -

-and the only logical effect was to trigger the successive writ of restrictions under 2255(h):

> (h)A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
> (1)newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.
> (June 25, 1948, ch. 646, 62 Stat. 967; May 24, 1949, ch. 139, § 114, 63 Stat. 105; Pub. L. 104–132, title I, § 105, Apr. 24, 1996, 110 Stat. 1220; Pub. L. 110–177, title V, § 511, Jan. 7, 2008, 121 Stat. 2545.)

It is submitted that the prior 2255 motion was functionally an abandonment of any obligation to file a proper Petition --which had no basis in logic or the law and thus was an abandonment as defined by *Harris* and *Crosby* which require some defect in the integrity of the federal habeas proceeding—as this 2255 would clearly constitute a defect in the integrity of the proceeding.

## II.

**EXTRAORDINARY CIRCUMSTANCES EXIST FOR THE GRANTING OF RELIEF IN THIS CASE: MR. CHEN'S EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT WAS VIOLATED BASED ON NEUROSCIENCE WHICH SHOWS THAT AN INDIVIDUAL'S BRAIN DEVELOPMENT DOES NOT REACH MATURITY UNTIL 25 AND THE UNITED STATES IS IN THE MAJORITY OF COUNTRIES IN THE WORLD THAT PERMIT LWOP.**

In *Miller v. Alabama,* 576 US 460, 479 (2012) the United States Supreme Court held that mandatory life sentences without the possibility of parole are unconstitutional for juveniles. Neuroscience establishes that the age of maturity at 25:

> Moreover, due to one of those changes, known as *synaptogenesis,*[104] adolescence is purported to be "one of the most dynamic events of human growth and development, second only to infancy in terms of the rate of developmental changes that can occur within the brain."[105] Accordingly, these developmental changes continue well beyond the age of eighteen, which is contrary to the stance of the criminal justice system.
>
> In order to determine when the adolescent brain reaches maturity, scientists focus on the prefrontal cortex.[106] The prefrontal cortex, located behind the forehead, provides an individual with the capacity to exercise good judgement in difficult situations.[107] It is also the portion of the brain "responsible for cognitive analysis, abstract thought, and the moderation of correct behavior in social situations."[108] Over all, the prefrontal cortex receives information from an individual's senses and creates thoughts and actions "to achieve specific goals."[109] Additionally, due to the prefrontal cortex being "one of the last regions to reach maturation," scientists believe that there is a direct correlation between lag in maturation and adolescents exhibiting behavior immaturity_11° Based on these findings in the prefrontal cortex, scientists concluded that the adolescent brain development is not complete until age twenty-five.[111]

Hayden, supra. In an earlier case the Court noted the differences between child and adult offenders: First, children have a "'lack of maturity and an underdeveloped sense of responsibility,'" leading to recklessness, impulsivity, and heedless risk-taking. Second, children "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have

8

limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." Id. Roper v. Simmons, 543 U.S. 551, 569, 570 (2005)).

A recent Washington Supreme Court decision (State v. Monschke) ruled that it is cruel and unusual punishment to give a person under the age of 20 an automatic life sentence without the opportunity for parole. The court ruled on the age of 20 because the petitioner in the case was that age. See The connection between brain science and sentencing reform Molly Quinton, ACLU-WA Media and Communications Specialist Published: Friday, January 5, 2024. In *Graham v. Florida*, 560 U.S. 48, 80 (2010). , the Supreme Court concluded that despite not looking to "[t]he judgments of other nations and the international community [to be] dispositive as to the meaning of the Eighth Amendment ... [t]he Court has looked beyond [its] Nation's borders for support for its independent conclusion that a particular punishment is cruel and unusual. Despite this the United States s in the minority of countries that provide a LWOP without any possibility of release. Over 100 countries signed onto the Rome Statute of the International Criminal Court ("ICC"), which requires a review of all life sentences after twenty-five years *"even for the most heinous offenses"*

9

including war crimes and genocide. Many countries have a cap on the years one can serve in prison even for the most heinous crimes:

> Countries that prohibit LWOP sentences tend to do so based on deep commitments to fundamental rights, humane treatment, and re habilitative principles.[185] These are all principles that the United States purports to uphold, despite its alarming use of the drastic sentence. In Croatia, for example, the maximum prison sentence available to the courts is between twenty to forty years, with an opportunity for release after a prisoner has served one-half or one-third of the sentence.[186] In Norway, the maximum prison sentence that may be imposed is twenty-one years, with the possibility of release after a prisoner has served twelve years.[187] The maximum prison sentence in Portugal is between twenty-five years to thirty years.[188] The laws of Slovenia provides for a maximum sentence of thirty years, even though the country has yet to ever impose such a lengthy sentence.[189] Incarcerated individuals in Slovenia with sentences longer than fifteen years may qualify for release contingent upon serving at least threequarters of the sentence.[190] Furthermore, Spain also imposes a maximum sentence of thirty years.[191] Despite the fact Iceland's laws allow for life sentences, the country has not imposed such a sentence since 1940.

Hayden, Supra. Even Zimbabwe has eliminated life without parole by its Constitutional Court's holding that it was cruel and inhuman punishment. See, *Toward a Global Consensus pn Life Imprisonment Without Parole, Transnational Legal Advocates and the Zimbabwe Constitutional Court's Decision in Makoni v. Commsioner of Prison*s. Chen has maintained 11 years clear conduct in prison. He has shown respect for the rules and regulations of th prison for many years. There is no doubt that he has been rehabilitated. He is honest, loyal, respectful and a dependable person. He has great respect for

10

the law. He is a God-fearing man. And has strong family and community ties. He accepts full responsibility for his past conduct and strive to be a better-man. There is no reason to think that Chen will still be a danger to society if released after serving 30 years in prison, at the age of ·52 years old. See U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders, https://www.ussc. gov./sites/defaulUfiles/pdf/research-and-publications/research-also <u>United States v. Piggott</u>, No. 94 Cr. 417, 2022 U.S. Dist. LEXIS 5293, 2022 WL 118632, at *3 (S.D. N.Y. Jan. 2020)([11]It is also well-established that recidivism decreases significantly with age."); <u>United States v. Bass</u>, 462 F. Supp. 3d 176, 189 (N.D.N.Y. 2020)(citing the Sentencing Commission's guidelines to support the unlikelihood of defendant's recidivism given his advanced age, and noting defendant's "mostly clean disciplinary record from his time in prison" and that defendant ability to "largely follow the rules while incarcerated suggest that he will do so once released, which minimizes the danger he poses to the community"). His family and the community are willing to aid him and support his restoration of self-independency. He has employment opportunities and financial resources from the community and family owned businesses, who are willing and able to help him reentry into the community if released.

11

## **CONCLUSION**

By reason of the foregoing, the Court should reopen its decision and order the mr. Chen be released from Federal Prison subject to supervised release.

Dated: September 18, 2024

/s/<u>ROBERT J. ADINOLFI, ESQ</u>

Robert Adinolfi, Esq.

136-33 37th Avenue, suite 9B

Flushing, NY 11354

(718) 337-8012