

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SP
F. #2023V02108

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 2, 2024

<u>By ECF</u>

The Honorable Edward R. Korman
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Jia Wu Chen
     <u>Criminal Docket No. 95-870 (ERK)</u>

Dear Judge Korman:

  Defendant Jia Wu Chen is a convicted murderer who sadistically tortured and raped numerous kidnapping victims to extort money from their families, sodomizing his victims and mutilating their genitals and other body parts with items like an electric cable, a heated screwdriver, a flashlight, and a meat cleaver. Now that the Court has rightly held him to account for these unspeakable acts with a lengthy term of incarceration, he has turned to serially filing baseless motions for early release. The Court has, appropriately, rejected all of Chen's efforts to date. <u>See</u> Orders dated, March 23, 2022; August 11, 2023; March 12, 2024; March 22, 2024; April 22, 2024; April 25, 2024; July 31, 2024.

  The government respectfully submits this letter in response to the defendnat's latest motion, in which he requests that the Court reopen its August 11, 2023 decision and to find that extraordinary and compelling reasons warrant a sentence reduction. For the reasons set forth below and the government's prior filings (<u>see</u> ECF Nos. 292, 316), and the Court's seven prior Orders, the defendant's motions are without merit and should be denied.

I. <u>Factual Background and Procedural History</u>

 a. <u>The Offense Conduct</u>

  On August 23, 1995, the defendant and others abducted Ko-Lai Zhang. Presentence Investigation Report, dated February 11, 1997 ("PSR") ¶ 1. The defendant directed Zhang to telephone her family in China to raise more than $30,000 for ransom for her safe release, to be delivered to co-conspirators in China. PSR ¶ 25. During the telephone calls to Zhang's family, after Zhang's mother informed the defendant that she could only raise $5,000,

the defendant and his co-defendants brutally beat Zhang. PSR ¶ 27. Although the defendant arranged for co-conspirators in China to collect the $5,000, he still threatened to kill Zhang if the family could not come up with the balance of the ransom. PSR ¶ 28. To prove the sincerity of their threats, they bound Zhang, retrieved a meat cleaver, a chopping board, and a rubber band torniquet, which they applied to Zhang's pinky finger to decrease the anticipated flow of blood. PSR ¶ 29. When the defendant's co-conspirator began to wave the meat cleaver around, tormenting Zhang, the defendant took the meat cleaver and chopped off Zhang's finger himself. PSR ¶ 29. The defendant then took the severed finger, showed it to other hostages and said the same would happen to them if their families did not comply. PSR ¶ 29. While waiting for the ransom payments, the defendant and two of his co-conspirators repeatedly raped Zhang. PSR ¶ 30.

Three days later, on August 26, 1995, the defendant and others abducted Xue-Ying Dong, threatening to kill her if her family did not pay a ransom for her safe release. PSR ¶ 1. During her captivity, Chen and others raped Xue-Ying Dong numerous times. PSR ¶ 30.

The same day as Xue-Ying Dong's abduction, the defendant and others abducted Xiu Fu Lin and ordered him to contact his family in China to pay a ransom for his safe release. On August 30, 1995, the defendant threatened that he would give the family one more chance to get the money. PSR ¶ 32. After the call, the defendant forced Lin to rape Zhang while others recorded it. PSR ¶ 32. When it became clear that Lin could not rape Zhang to satisfy their sadism, the defendant and others beat Lin in the groin with an electric cable and tortured him with a heated screwdriver. Ultimately, Lin was forced to vaginally penetrate Zhang with a flashlight. PSR ¶ 30.

After a week of captivity and torture, Zhang, who had by then given up hope, begged to be killed. PSR ¶ 37. The defendant and another co-conspirator wrapped an electric cord around Zhang's neck, each pulling one end of the cord until Zhang lost consciousness and releasing the cord until she regained unconsciousness. PSR ¶ 38. The defendant and his co-conspirator repeated this torturous game several times. PSR ¶ 38. When this began to bore the defendant, he used a flashlight to vaginally penetrate Zhang. PSR ¶ 38.

On August 31, 1995, Lin's wife told the defendant that she had raised $30,000. PSR ¶ 33. But when the defendant arranged for his co-conspirators in China to retrieve the money, he discovered that it was 30,000 in Chinese currency. PSR ¶ 33. The defendant directed the co-conspirators to accept the money and said Lin would be released when additional funds, which the defendant deemed to represent the remainder of the balance, was received. PSR ¶ 33. The defendant and his confederates forced Lin to ingest several glasses of alcohol. PSR ¶ 34. When Lin vomited, they made him drink the vomit and continue drinking alcohol until he pretended to lose consciousness. PSR ¶ 34. Believing Lin was pretending to have lost consciousness, the defendant stomped on Lin's chest. PSR ¶ 34. When Lin did not move, the defendant carried him to a vehicle and drove him to a wooded area at the intersection of Grand Central Parkway and Hewlett Street in Queens, NY, where one of the defendant's co-conspirators shot Lin twice in the back of the head and left him for dead. PSR ¶ 35. Miraculously, Lin survived. PSR ¶ 36.

Three days later when the defendant and his co-conspirators discovered that Lin had survived, they strangled Zhang to death. PSR ¶ 40. When Zhang's body was found later that night, she was face down, hands bound behind her back, a television set on her back and a plastic bag tied around her head with a cord. PSR ¶ 42. Several additional cords were tied around her neck, and one was connected to a weight-lifting bench. PSR ¶ 25. Her mouth was stuffed with paper towels and covered by duct tape. PSR ¶ 42. She was also found with several broken ribs and a note which jeered at the police, daring them to catch the group. PSR ¶ 42.

After the defendant and his confederates killed Zhang, they fled the apartment where they had been holding the hostages. PSR ¶ 41. The remaining hostage, Xue-Ying Dong was able to free herself, eventually starting a fire in the premises that drew the attention of law enforcement.

Remarkably, though the crimes described above are utterly heinous and disturbing, the Court should note that these were merely the counts to which the defendant pled guilty. The defendant was involved in and directed other kidnappings across the country, even coordinating a kidnapping in Seattle. See PSR ¶¶ 18, 20. Additionally, the defendant personally participated in three armed robberies and, as stated above, tortured and repeatedly raped Ko-Lai Zhang and Xue-Ying Dong. PSR ¶¶ 12-16, 30.

The defendant and his co-conspirators were indicted on a nine-count indictment charging conspiracy against the United States, in violation of 18 U.S.C. § 371, four counts of using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c), and four counts of hostage taking in violation of 18 U.S.C. § 1203(a), with one count resulting in the death of Ko-Lai Zhang. Hostage-taking resulting in death has a binary penalty provision — life imprisonment or death are the only statutorily authorized penalties. See 18 U.S.C. §1203(a). Chen pleaded guilty to Counts Four, Six and Eight, all Section 1203(a) charges, to avoid the death penalty.

During sentencing, the Court gave the defendant an opportunity to address the Court. The defendant offered the following brief, insensitive and selfish statement:

> Please tell the Judge that I feel sorry to the family of the victim for what I did. I feel sorry to the government, sorry for my parents at home. At this time, I just have to face the fact - - I'm willing to accept the punishment from the government. That's it.

See ECF No. 262 (Sentencing Tr.) at 4:6-10 (Feb. 21, 1997). The defendant did not mention his attempted murder of Xiu Fu Lin, his brutal rapes of Xue-Ying Dong, or his other senselessly violent actions towards all his other hostages and victims. The Court also heard testimony from Ko-Lai Zhang's family. Zhang's sister-in-law stated:

> I feel no matter what they plead to, it doesn't matter what they plead to, but why did they kill [Zhang]? And if they cannot pay a full ransom, why do they have to kill her? You kill…you kill the person – you kill the person, you hurt everyone. You hurt two

3

> families in that. Her parents-in-law are already in their seventies, eighties. They're very old really. Because of what happened to her, they had to be hospitalized, they had to be confined to their beds. They couldn't get up, they couldn't face life…
>
> Only in the United States can you still be alive. If it was in China, you would have been executed…
>
> You think just by sentencing him to life in prison – her kids, my niece and nephews…her children are always thinking about their parents…

See Sentencing Tr. at 5:4-25.

After hearing testimony from Zhang's grieving family, the Court sentenced the defendant to life imprisonment. The remaining counts of the indictment were dismissed upon sentencing and the Government withdrew its notice of death penalty. See Sentencing Tr. at 6:16–20.

b. Post-Conviction Proceedings

On February 28, 2022, the defendant filed a motion for compassionate release and sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). See ECF No. 289. On March 10, 2022, the government moved to dismiss the defendant's motion and supplemented its motion with the defendant's disciplinary history from the Bureau of Prisons. See ECF No. 292. On March 23, 2022, this Court granted the government's motion to dismiss the defendant's motion, stating, in its order:

> The defendant's motion for compassionate release is denied. The defendant committed a series of heinous crimes, namely murder, kidnapping, rape, and torturing his victims. The only appropriate sentence under 18 U.S.C. § 3553(a) is the one he received. See United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021). Nor are any the defendant's alleged reasons for a sentence reduction extraordinary and compelling. He is serving a statutorily mandated life sentence, see 18 U.S.C. § 1203(a), which is not excessive in any sense of the term given the crimes he committed. Moreover, the facts of this case belie any assertion that he lacked impulse control or the ability to understand the consequences of his actions. See PSR paras. 26-40.

On May 18, 2023, the defendant moved pro se to modify his imprisonment under 18 U.S.C. § 2255 on the grounds that he was actually innocent according to the holdings in United States v. Taylor, 142 S. Ct. 2015, 2025 (2022) and United States v. Davis, 139 S. Ct. 2319, 2336 (2019) and that he received ineffective assistance of counsel. See ECF No. 307.

On June 13, 2023, the defendant filed a memorandum of authority and law in support of an affidavit additionally requesting an evidentiary hearing under 28 U.S.C. § 2255 to determine whether the terms "seize and detain" were explained to him prior to the defendant's plea.  See ECF No. 313.

On June 16, 2023, the defendant filed an additional motion requesting a psychiatric examination under 18 U.S.C. § 4247(c)(d) and Federal Rule of Civil Procedure 35(a)(1) to determine if the defendant is either competent to stand trial if the court orders a new trial or mentally fit to return to society having been traumatized by a false conviction and a sentence to life imprisonment.  See ECF No. 312.

On September 26 and 27, 2024, the defendant filed motions to reopen the Court's August 11, 2023 Order under Federal Rule of Civil Procedure 60(b)(6) denying the defendant's motion for compassionate release.  See ECF Nos. 337, 339.

II.   Applicable Law

  a.  Section 2255 Petitions

   i.  Generally

Title 28, United States Code, Section 2255 allows federal prisoners to challenge the constitutionality of their sentences.  Section 2255 provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  To qualify for relief under Section 2255, the defendant bears the burden of showing "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'"  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

III.  Discussion

  a.  The Defendant Is Not Entitled to Relitigate His Claims Under Federal Rule of Civil Procedure 60(b)(6) or 28 U.S.C. § 2255(h)

Federal Rule of Civil Procedure 60(b)(1)-(5) allows a court to grant relief to a party from an order or final judgment, if specific circumstances exist, such as misrepresentation

5

by an opposing party, unanticipated newly discovered evidence, or if the judgment is void. Id. However, Rule 60(b)(6) acknowledges and accounts for a non-exhaustive list of circumstances that may warrant relief, allowing for "any other reason that justifies relief." However, the Court need not consider whether this catchall provision applies in the defendant's case because as this rule governs federal civil procedure, its authority does not apply in federal criminal proceedings.

    b.  There Are No "Extraordinary Or Compelling Circumstances" Warranting Relief

The defendant's latest motion still fails to establish any "extraordinary and compelling" reasons for the Court to modify his sentence. Courts have found that extraordinary and compelling reasons should be "of similar magnitude and importance to [] those specifically enumerated in" United States Sentencing Guidelines Section 1B1.13. United States v. Pinto-Thomaz, 454 F. Supp. 3d 327, 329 (S.D.N.Y. 2020). The phrase "extraordinary and compelling" in the First Step Act — language drawn from former compassionate-release statutes enacted in the 1980s — plainly means as much. 18 U.S.C. § 3582(c)(1)(A)(i); see also Sentencing Reform Act of 1984, Pub. L. No. 98-473, tit. II, ch. 2, §§ 212, 217, 98 Stat. 1987, 1998-99, 2023; 18 U.S.C. § 4205(g) (1980). The Court "should be wary of using the motion to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences, while still honoring Congress's stated intent of increasing the availability of compassionate release." United States v. Ebbers, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020). But here, as articulated in more detail below, the defendant still has not established any extraordinary or compelling reasons that would justify compassionate release or a reduction in his sentence.

First, when a still-applicable mandatory minimum is involved, the length of a sentence cannot by itself make out "extraordinary and compelling" circumstances. He was sentenced to life imprisonment as one of only two statutorily permissible sentences for hostage taking that results in a death under 18 U.S.C. § 1203(a). As when the defendant was sentenced, Section 1203(a) still states that

> (a) Except as provided in subsection (b) of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life **and, if the death of any person results, shall be punished by death or life imprisonment**.

18 U.S.C. §1203(a) (emphasis added). Even if Booker were retroactive, which it is not, it would not apply on the merits. See Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005) ("Booker is not retroactive.").

Second, the defendant's claims that he was some impressionable "adolescent" with an underdeveloped impulse control or ability to understand the consequences of his actions

belies the facts of the case. The defendant was not a peer-pressured teenager acting on impulse. He was a 23-year-old leader in a multinational criminal organization that coordinated kidnappings across the country and directed the collection of ransom money in China. His actions were calculated, coordinated, and sadistic. It was the defendant who handled the telephone communications with the families of his hostages, directed the China-based co-conspirators to accept the money from Lin's family in China, repeatedly raped Zhang and Dong and brutally beat them while their families were on the phone. PSR ¶ 26, 30, 33. It was the defendant that cut off Zhang's finger after growing agitated with his co-conspirator's delay and then, while holding the severed finger, threatened to do the same to the other hostages. PSR ¶ 29. It was the defendant who strangled Zhang in and out of consciousness again and again and then strangled her to death. PSR ¶¶ 38, 40. It was the defendant who forced Lin to drink his own vomit and then stomped on his chest to determine if Lin was pretending to be unconscious. PSR ¶ 34. A co-leader of the Plum Blossom Boys, co-defendant Fu Xin Chen, was only 19 years old at the time these crimes occurred. After making a similar argument for compassionate release, Your Honor denied his application, stating,

> the defendant committed a series of heinous crimes, namely murder, kidnapping, rape, and torturing his victims. Passing over whether the defendant has shown extraordinary and compelling circumstances warranting consideration of a sentence reduction, the only appropriate sentence under 18 U.S.C. § 3553(a) remains a sentence of life imprisonment.

United States v. Fu Xin Chen, No. 95-CR-870 (ERK) (Sept. 28, 2021) (Minute Entry). The same result should hold here.

In any event, the defendant's age at the time of his crimes is not itself a new fact that could support a finding of "extraordinary and compelling" circumstances. See United States v. Ebbers, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020) ("What justifies compassionate release is a finding that new mitigating 'extraordinary and compelling' circumstances exist to reduce that sentence; it is not an opportunity to second guess or to reconsider whether the original sentence was just.") (emphasis added).

Third, the defendant's argument that his sentence was excessive is without merit. Where Congress mandates a sentence, a defendant's disagreement with the severity of that sentence is unavailing as a matter of law. See, e.g., United States v. Waite, 12 F.4th 204, 213 (2d Cir. 2021) (affirming allegedly excessive sentence where sentence was statutorily mandated because "statutorily mandated sentences represent not the judgment of a single judge but the collective wisdom of the ... Legislature"); United States v. Howard, 369 F. App'x 354, 356 (3d Cir. 2010) ("District Court's application of the statutory minimum sentence was entirely proper.").

c. The § 3553(a) Factors Weigh Against Reducing the Defendant's Sentence

Even if extraordinary and compelling reasons were to exist here (and they do not), the Court should deny the motion in light of the relevant Section 3553(a) factors. "[A] court

7

confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. O'Neil, No. 17-CR-444 (JMA), 2021 WL 1616915, at *1 (E.D.N.Y. Apr. 26, 2021).

Beginning with the "nature and circumstances" of the offense, the defendant and his confederates engaged in a pattern of violent and sadistic robberies, kidnappings, rapes and murder. Their treatment of the victims was barbaric. For these reasons, a life sentence appropriately reflects the "seriousness of the offense" and will serve to deter future criminal conduct. See 18 U.S.C. §§ 3553(a)(2)(A) & (B).

With respect to the defendant's "history and characteristics," his adulthood reflects an inability to follow the law and applicable rules that has continued into his 30s and 40s. His disciplinary infractions are not minor; they involve violent assaults, possession of dangerous weapons and numerous instances of not only possessing illicit drugs in prison but also trying to smuggle illicit drugs into prison. His record of rehabilitation is correspondingly unimpressive. Even the defendant's prior letter to the Court suggests he has not fully come to grips with his conduct. He continues to minimize his offenses, offering no remorse, pointing to his youth and his supposed susceptibility, notwithstanding the fact that the defendant was found to be a leader of the criminal conduct at issue and was not a juvenile at the time of the offenses. The defendant's crimes were not spur of the moment or impetuous; the defendant was not coerced by others or placed under duress.

The applicable guidelines range, 18 U.S.C. § 3553(a)(4) and "the need to avoid unwarranted sentence disparities among defendants with similar records," id. at § 3553(a)(6), also favor a life sentence. At sentencing, probation calculated the defendant had an adjusted offense level of 48, was in criminal history Category II, and had a guidelines range of life. The Government estimates that is still the case today. Moreover, the co-defendant who was closest to the defendant in terms of culpability, Fu Xin Chen, was also sentenced to life imprisonment and denied compassionate release.

A life sentence is the minimum, the very least sentence, that this Court should impose for the defendant's crimes. Sentencing Tr. at 6:12–15.

IV.   Conclusion

In sum, the Court was correct to reject all of the defendant's efforts to date to reduce his sentence. See Orders dated, March 23, 2022; August 11, 2023; March 12, 2024; March 22, 2024; April 22, 2024; April 25, 2024; July 31, 2024. The defendant presents no new

information or valid legal arguments warranting any kind of relied.  For all these reasons, the defendant motion should be denied in its entirety.

Respectfully submitted,

BREON PEACE
United States Attorney

By:  /s/ Stephanie Pak
Stephanie Pak
Assistant U.S. Attorney
(718) 254-6064

cc: Clerk of the Court (ERK) (via ECF)
Robert J. Adinolfi, Esq. (Counsel for the Defendant)
Defendant Jia Wu Chen (via certified mail)